IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ACADEMY OF MOTION PICTURE ARTS AND SCIENCES, a California nonprofit corporation<br><br>Plaintiff<br><br>v.<br><br>JAIME DE LA ROSA, an individual; and DOES 1-10, inclusive<br><br>Defendants | CIVIL ACTION NO. 1:14-cv-00116-SS<br><br>**ORAL ARGUMENT REQUESTED** |

## PLAINTIFF ACADEMY OF MOTION PICTURE ARTS AND SCIENCES' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(c)

Plaintiff Academy of Motion Picture Arts and Sciences (the "Academy") respectfully moves the Court, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for an order granting judgment on the Academy's claims against Defendant Jaime De La Rosa based on the pleadings and awarding damages and a permanent injunction against Mr. De La Rosa. In support of its motion, the Academy relies on its Complaint ("Compl." (Doc. 1)) and Mr. De La Rosa's Answer ("Answer" (Doc. 11)).

To the extent a hearing would facilitate the Court's resolution of the issues presented by the Academy's motion, it respectfully requests that the Court hold a hearing.

### PRELIMINARY STATEMENT

Through its Complaint, filed on February 5, 2014, the Academy seeks injunctive relief and damages for copyright infringement, trademark infringement, trademark dilution, false designation of origin and false representation willfully committed by Defendant Jaime De La Rosa in violation of the laws of the United States. That relief should now be granted. On March 5, 2014, Mr. De La Rosa filed his Answer, admitting to all causes of action

1097534

alleged against him. Pursuant to Rule 12(c), to spare unnecessary investment of judicial resources in this action, the Academy seeks judgment on each cause of action, an award of statutory damages of $75,000 for infringement of the Academy's copyright, an award of statutory damages of $300,000 for infringement of the Academy's registered trademarks, and permanent injunctive relief.

## BACKGROUND FACTS

Jamie De La Rosa repeatedly offered for sale and sold unauthorized counterfeit replicas of the Academy's famous "©Oscar®" statuette through the websites of eBay and Etsy, advertising, among other descriptions, "Academy Award Hollywood Metal Movie Acting Trophy Prop Replica." (Compl. ¶¶ 14-21, Exh. E.)  As the symbols surrounding "©Oscar®" reflect, the "©Oscar®" statuette is both copyrighted and a registered trademark of the Academy. (*See* Compl. ¶¶ 9-10, Exhs. A-C.) "Academy Award" is also a registered trademark of the Academy. (Compl. ¶ 11, Exh. D.) Upon learning of Mr. De La Rosa's infringing activity, the Academy contacted him, informed him of the Academy's legal rights in the statuette, and asked him to cease his practice of selling counterfeits and provide the Academy with information regarding the counterfeits he had sold and the supplier of those counterfeits. (Compl. ¶ 16, Exh. G.) In response, Mr. De La Rosa represented to the Academy that he was complying with the Academy's requests. (Compl. ¶ 17, Exh. H.) On November 26, 2013, he sent the Academy one of the counterfeit replicas, falsely claimed he possessed no other counterfeits, falsely claimed he had only sold six counterfeits in total, and promised no longer to sell counterfeit replicas of the Academy's "©Oscar®" statuette. (*Id.*) Mr. De La Rosa even signed a declaration, under penalty of perjury, declaring that his representations to the Academy were true and repeating his promise to cease selling

counterfeits. (Compl. ¶ 18, Exh. I.) Yet Mr. De La Rosa continued to sell the counterfeits that he had kept in his possession, revealing his declaration to be false. (Compl. ¶ 19.)

Mr. De La Rosa failed to answer the Academy's questions regarding his source of the counterfeits and then stopped communicating with the Academy completely regarding this matter, forcing the Academy to file this action on February 5, 2014. (Compl. ¶ 20, Exh. K.) Meanwhile, Mr. De La Rosa continued to sell counterfeit "©Oscar®" statuettes. (Compl. ¶ 21.) In response to the Academy's Complaint, Mr. De La Rosa filed his Answer on March 5, 2014. In the Answer, Mr. De La Rosa did not deny or refute any of the Academy's allegations or assert any defenses for his actions. Instead, he submitted his admission to the entire complaint, responding:

> I, Jaime De La Rosa, on this 5th day of March, 2014 am submitting to the courts my admission to the causes of damages that The Academy of Motion Picture Arts and Sciences have alleged against me.
>
> To prove this I have submitted evidence in my response to Exhibits E, F and J.

(Answer, p. 1)

## STANDARD FOR JUDGMENT ON THE PLEADINGS

The Federal Rules of Civil Procedure provide: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c); *see also Sojourner T v. Edwards*, 974 F.2d 27, 29-30 (5th Cir. 1992) (affirming judgment for plaintiff on the pleadings). Motions for judgment on the pleadings are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotation marks omitted). Judgment on the pleadings "is

3

appropriate when, after the pleadings are closed, a court determines that there is no material issue of fact presented and that one party is clearly entitled to judgment." *Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982) (internal quotation marks, footnote, and citation omitted). On a plaintiff's motion for judgment on the pleadings, "the fact allegations of the answer are to be taken as true, but those of the complaint are taken as true only where and to the extent that they do not conflict with those of the answer." *Bass v. Hoagland*, 172 F.2d 205, 207 (5th Cir. 1949). Thus, a judgment on the pleadings must be based on the undisputed facts considering all of the pleadings. *See Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1957) (citing *Bass*, 172 F.2d at 207). For purposes of a motion for judgment on the pleadings, "uncontested allegations to which a party had an opportunity to respond are taken as true." *Flora*, 685 F.2d at 211.

## ARGUMENT

Mr. De La Rosa admitted the Academy's allegations, and did not contest any of them. (Answer) Accordingly, the Academy should be granted judgment on the pleadings in the amount of $375,000 and a permanent injunction should be issued prohibiting Mr. De La Rosa from further infringing sales and requiring him to turn over any "©Oscar®" statuettes he possesses, as well as molds for these statuettes and any other means of creating them. *See Great Plains Trust Co.*, 313 F.3d at 312; *Flora*, 685 F.2d at 211.

### I. THE ACADEMY IS ENTITLED TO JUDGMENT ON THE MERITS OF EACH CAUSE OF ACTION IT PLED

#### A. Mr. De La Rosa Infringed The Academy's Copyright.

To prove a claim of copyright infringement, plaintiff must prove ownership of a valid copyright and a violation of the copyright owner's exclusive rights in the copyrighted

4

1097534

material. 17 U.S.C. § 501; *Am. Registry of Radiologic Technologists v. Bennett*, 939 F. Supp. 2d 695, 702 (W.D. Tex. 2013). These elements are satisfied. First, it is undisputed that the Academy possesses a valid copyright in the "©Oscar®" statuette. (Compl. ¶ 9, Exhs. A and B) *Gen. Universal Systems, Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) ("A certificate of registration . . . is prima facie evidence both that a copyright is valid and that the registrant owns the copyright."). Second, Mr. De La Rosa admits to dealing in counterfeit copies of the "©Oscar®" statuette. (Compl. ¶ 24, Exhs. E, F, and J; Answer.) The sale of counterfeit copies is undeniably a violation of the Academy's exclusive rights from a copyright. 17 U.S.C. § 106(3) (granting copyright owners the exclusive right "to distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership"). Accordingly, the Academy is entitled to judgment on its copyright infringement claim.

  **B. Mr. De La Rosa Infringed The Academy's Trademark Rights In The "©Oscar®" Statuette Design and the OSCAR and ACADEMY AWARD Word Marks.**

To prove a claim of trademark infringement, plaintiff must prove ownership of a legally protectable mark and likelihood of confusion. 15 U.S.C. §§ 1114(1), 1125(a); *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 (5th Cir. 2010). The Academy possesses legally protectable marks in its "©Oscar®" statuette design and in its OSCAR® and ACADEMY AWARD® word marks (collectively, the "Marks"). (Compl. ¶¶ 10, 11, 29, Exhs. C and D.) Mr. De La Rosa used the Marks in a variety of ways. He used the statuette mark in the design of the counterfeit statuettes he sold and in the images of them in his advertising. (Compl. ¶¶ 15, 19, 21, Exhs. E, F, J, and L.) Mr. De La Rosa used the word marks in his advertising and sale of the statuettes, describing the items as "Academy

5

Award Hollywood Metal Movie Acting Trophy Prop Replica" and "OSCAR Award Statue Replica Hollywood Movie Metal Trophy Prop." (Compl. Exhs. E and L.) Mr. De La Rosa's admission, through his Answer (Compl. ¶ 30; Answer), establishes that he used the Marks "in a manner likely to cause confusion or mistake or deceive." *Osgood Heating & Air Conditioning, Inc. v. Osgood*, 2004 WL 3436800, *2 (W.D. Tex. Dec. 21, 2004).

Even if Mr. De La Rosa had not conceded a likelihood of confusion, his failure to contest that he actually advertised the counterfeit statuette and did so using the words and images shown in Exhibit E to the Complaint is sufficient to establish a likelihood of confusion. "Generally, a likelihood of confusion analysis involves a factual inquiry into several different factors. ... However, in the case of a counterfeit mark, likelihood of confusion is clear." *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 n.11 (S.D. Tex. 2000) (citations omitted); *see also Chanel, Inc. v. P'ships and Unincorporated Ass'ns Identified in Schedule A*, 2013 WL 5425252, *3-4 (S.D. Tex. Sept. 26, 2013) (finding a likelihood of confusion from the advertisement and sale of counterfeit Chanel products without engaging in an analysis of the confusion factors); *Coach, Inc. v. Brightside Boutique*, 2012 WL 32941, *3 (W.D. Tex. Jan. 6, 2012) ("In cases such as the present one, where the marks used by the allegedly infringing party are the exact marks owned by the plaintiff, confusion may be found likely without analysis of each digit of confusion.").

Moreover, even under the factors analyzed in *Pebble Beach Co. v. Tour 18 Ltd.*, a likelihood of confusion is established. 155 F.3d 526, 543 (5th Cir. 1998). First, the Academy's Marks have been held to be very strong and deserving of the "strongest protection possible." *Academy of Motion Picture Arts and Sciences v. Creative House*

6

1097534

*Promotions, Inc.*, 944 F.2d 1446, 1455 (9th Cir. 1991). Second, Mr. De La Rosa used marks identical to, or virtually indistinguishable from, the Academy's Marks. (Compl. Exhs. E, F, J, and L.) Third, Mr. De La Rosa used the ACADEMY AWARD® and OSCAR® marks in connection with a statuette that is virtually identical to that offered by the Academy. (*Id.*) Under these circumstances, no possible evidence on the other factors could justify a different conclusion. Therefore, the Academy is entitled to judgment on its trademark infringement claim.

      **C.**    **Mr. De La Rosa's Actions Constitute A False Designation of Origin.**

"The elements of trademark infringement and false designation of origin are identical and the same evidence will establish both claims." *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 674 (W.D. Tex. 2008). For the reasons discussed above in Section B, the Academy has established its claim of false designation of origin, and it is entitled to judgment in its favor.

      **D.**    **Mr. De La Rosa's Advertising Contained False Representations.**

The Lanham Act prohibits the use in commerce of any word or phrase "in commercial advertising or promotion, [that] misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a). A defendant's use of plaintiff's trademarks on the defendant's own goods constitutes a false representation. *E.g., Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir. 1975) ("[D]efendant's identical use of Toronto's mark constitutes a false representation under § 1125"); *Grand Time Corp. v. Watch Factory Corp.*, 2011 WL 2412960 *5 (N.D. Tex. June 10, 2011) (granting summary

judgment on a false representation claim where defendant sold a product under plaintiff's trademarked name).

Mr. De La Rosa admitted misrepresenting to the public that the products he sold were sponsored, approved, or licensed by the Academy. (Compl. ¶¶ 42, 43; Answer.) He conveyed this affiliation both by selling copies of "©Oscar®" statuettes that are strikingly similar to the Academy's trademarked statuette and by using the trademarked ACADEMY AWARD® and OSCAR® marks in connection with advertising his own goods, which were not genuine "©Oscar®" statuettes authorized by the Academy. (Compl. ¶¶ 8, 12-13, Exhs. E, F, J, and L.) His misrepresentations therefore had the capacity to deceive potential customers. (Compl. ¶¶ 42-44; Answer.) Further, Mr. De La Rosa does not dispute that his misrepresentations were material, as the entirety of the statuette's appeal consists of its association with the Academy. (Compl. Exhs. E, F, J, and L; Answer.) Indeed, that association is the only plausible explanation for the high prices charged and paid for the statuettes. (Compl., Exhs. E, F, H, J, and L.) Further, the products were sold in interstate commerce, and the Academy has been or is likely to be injured as a result of these misrepresentations. (Compl. ¶¶ 42-45, Exhs. E, F, H, J, and L; Answer.) Accordingly, the Academy is entitled to judgment on its false representation claim.

      E.    **Mr. De La Rosa's Activity Dilutes The Academy's Famous Trademarks.**

The Lanham Act protects owners of famous, distinctive trademarks, like the Academy's Marks, from acts that are "likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c). The Academy's Marks are distinctive and famous: they are widely recognized by the general

consuming public of the United States as a designation of source of the goods and services of the Academy. 15 U.S.C. § 1125(c)(2) (Compl. ¶ 47.) The Marks are indisputably strong and have been used in commerce for over 80 years. (*See* Compl. ¶ 8) *Academy of Motion Picture Arts and Sciences*, 944 F.2d at 1455 (the Academy's "©Oscar®" statuette mark "should be given the strongest possible protection"). Mr. De La Rosa has admitted that his unauthorized use of the Marks diluted and tarnished them. (Compl. ¶ 48; Answer.) Dilution always results from counterfeits and knock-off copies of goods using famous trademarks. *E.g., Nike Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp. 2d 1352, 1372 (S. D. Ga. 2003), *aff'd*, 107 Fed. Appx. 183 (11th Cir. 2004) (finding counterfeit Nike products likely to cause dilution); *Diane Von Furstenberg Stuido v. Snyder*, 2007 WL 2688184, *4 (E.D. Va. Sept. 10, 2007) (finding counterfeit Diane Von Furstenberg dresses likely to cause dilution); *Burberry Ltd. v. Euro Moda, Inc.*, 2009 WL 1675080, *13-15 (S.D.N.Y. June 10, 2009) (finding counterfeit Burberry products likely to cause dilution). Therefore, the Academy is entitled to judgment on its trademark dilution claim.

## II.  THE ACADEMY IS ENTITLED TO DAMAGES

### A.  The Academy Is Entitled to Statutory Damages for Mr. De La Rosa's Copyright Infringement.

The owner of an infringed copyright "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work ... in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If a court finds "that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. §

9

504(c)(2). In the copyright context, the Fifth Circuit has held that a "defendant acts 'willfully' within the meaning of [the statutory damages provision of the Copyright Act] ... if he knows his actions constitute an infringement; the actions need not have been malicious." *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988). "A court may infer willfulness from evidence that notice of a valid copyright was provided to the defendant prior to the infringement." *WB Music Corp. v. Big Daddy's Entm't, Inc.*, 2005 WL 2662553, *4 (W.D. Tex. Oct. 18, 2005).

In connection with this motion, the Academy elects to receive statutory damages based on Mr. De La Rosa's willful copyright infringement. (Compl. ¶ 54.) Mr. De La Rosa's Answer does not challenge that his copyright infringement was "willful, deliberate and malicious." (Compl. ¶ 26; Answer.) In addition, his undisputed actions demonstrate willfulness. Even if Mr. De La Rosa had not initially been aware of the Academy's copyright in its "©Oscar®" statuette, the Academy put Mr. De La Rosa on notice of the copyright through its November 19, 2013 letter. (Compl. ¶ 16, Exh. G.) Yet even after receiving that notice, Mr. De La Rosa continued to offer for sale and sell his counterfeit "©Oscar®" statuettes. (Compl. ¶¶ 19, 21, Exhs. J and L.) Although Mr. De La Rosa told the Academy that he would no longer sell counterfeits and signed a declaration under penalty of perjury to that effect, he continued to do so. (Compl. ¶¶ 17-19, Exhs. H and I.) Mr. De La Rosa's continued, knowing infringement constitutes willful copyright infringement. *E.g.*, *Broadcast Music*, 855 F.2d at 236 ("[A] defendant acts 'willfully' within the meaning of [the statutory damages provision of the Copyright Act] ... if he knows his actions constitute an infringement; the actions need not have been malicious."); *see also* 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT §14.04(B)(3)(a) (2012) (Willfulness "classically

1097534

arises when defendant ignores a warning letter sent by plaintiff's counsel."); *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 253 (2d Cir. 1992) (reversing finding of no willfulness when infringer received notice of infringement, told copyright owner infringement would cease, and continued to infringe); *WB Music*, 2005 WL 2662553 at *4 ("[C]ourt may infer willfulness from evidence that notice of a valid copyright was provided to the defendant prior to the infringement.").

The Copyright Act's statutory damages provision, "formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 278 (5th Cir. 2002) (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)). District courts are afforded broad discretion in determining the size of statutory damage awards in copyright infringement actions. *Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257, 1263 (S.D. Tex. 1989), *aff'd*, 915 F.2d 1567 (5th Cir. 1990). Thus, "[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy." *Id.* (quoting *F.W. Woolworth Co.*, 344 U.S. at 233). Evaluating the appropriate amount of statutory damages, courts have considered the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Coach, Inc. v. Brightside Boutique*, 2012 WL 32941 at *5 (citations omitted).

Given the willful and recidivist nature of Mr. De La Rosa's copyright infringement and his prior misrepresentations under penalty of perjury, the need for deterrence is especially acute. *Malibu Media, LLC v. John Does 1, 6, 13, 14, et al.*, 950 F. Supp. 2d 779, 788 (E.D. Pa. 2013) (a copyright infringement defendant perjuring himself required a "substantial award of damages" to "effectively deter others from acting as [defendant] had acted in this case"); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 442-44 (D. Del. 2005) (defendants' "conduct that borders on or constitutes perjury" justified a finding of willful copyright infringement, resulting in additional damages to deter such conduct). Factors 5 and 7 thus strongly favor a high award.

Likewise, factors 1 and 3 (expenses saved, profits reaped and value of the copyright) favor a high award because Mr. De La Rosa offered for sale and sold a statuette that is generally considered priceless as there is virtually no means for someone to purchase the genuine article, short of criminal theft. (*See* Compl. ¶¶ 12-13.) For most in the motion picture industry, the valid receipt of a genuine Academy Award represents the highest possible level of recognition in their chosen field and the culmination of a significant work in the motion picture arts and sciences. (*See* Compl. ¶¶ 8, 12.) Thus, the value of what Mr. De La Rosa unlawfully offered for sale should be assessed at the highest possible amount permitted under the statutory damages provision. *See WB Music*, 2005 WL 2662553 at *4 (noting statutory awards of three to five times the licensing fees sought by the copyright owners) (Compl. ¶¶ 12-13). Factor 6 also favors the Academy because Mr. De La Rosa's past "cooperation" in providing records was deceitful (Compl. ¶¶ 17-19, Exhs. H and I), and Mr. De La Rosa's Answer does not identify how much he has received in total from his

1097534

infringing sales, only providing in Exhibits documents confirming the sales the Academy specifically identified in its Complaint (Compl. Exhs. F, H, and J; Exhibit to Answer).

The undisputed record also reveals that Mr. De La Rosa has sought up to $5,000 per statuette—presumably the amount he would continue to seek if his conduct is not effectively deterred. (*See* Compl. Exh. L.) Because a "defendant should not reap a benefit from its violation of the copyright laws," the statutory award should put him "on notice that it costs less to obey the copyright laws than to violate them." *Fermata Int'l Melodies, Inc.*, 712 F. Supp. at 1263 (internal quotation marks and citation omitted). Accordingly, factor 4 (deterrence of others) also favors a high statutory award. The Academy is a non-profit organization (Compl. ¶ 3), and undertaking litigation is costly. The statutory award here is important to send a message to other would-be-infringers: the dollar signs they see when envisioning infringing the Academy's copyrights should represent not the money they will gain from infringement, but how much they will lose from it.

Under the circumstances, the Academy is entitled to the maximum statutory amount for willful copyright infringement, $150,000. However, the Academy recognizes that Mr. De La Rosa is an individual, who may have limited means to pay. Accordingly, although eligible for $150,000 in statutory damages for copyright infringement, the Academy requests, and should receive, $75,000. *See Am. Registry of Radiologic Technologists v. Bennett*, 2013 WL 4520533, *13 (W.D. Tex. Aug. 26, 2013) (awarding statutory willful copyright infringement damages of $87,000 against individual *pro se* defendant); *Microsoft Corp. v. Butcher*, 2007 WL 1567605, *1 (E.D. Tex. May 30, 2007) (awarding statutory willful copyright infringement damages of $175,000 against individual *pro se* defendant); *Santander Consumer USA Inc. v. Girdner*, 2009 WL 4251123, *1 (N.D. Tex. Nov. 30, 2009) (awarding

1097534

statutory willful copyright infringement damages of $50,000 against individual in a default judgment).

    **B.    The Academy Is Entitled to Statutory Damages for Violation of Federal Trademark Law.**

Federal trademark law provides for statutory damages for the sale of counterfeit goods. 15 U.S.C. § 1117(c). Like the Copyright Act, it permits the owner of the mark to "elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages." *Id.* In connection with this motion, the Academy elects to receive statutory damages based on Mr. De La Rosa's sale of counterfeit statuettes. (Compl. ¶¶ 14-22.) Pursuant to the trademark statute, statutory damages must be in an amount "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services" or, if the use of the mark was willful, "not more than $2,000,000 per counterfeit mark per type of goods or services." 15 U.S.C. § 1117(c). Although statutory damages of millions of dollars would be authorized by the statute, the Academy requests $100,000 for each of its trademarks infringed in Mr. De La Rosa's counterfeiting scheme (the "©Oscar®" statuette design, the OSCAR® word mark, and ACADEMY AWARD® word mark), for a total of $300,000.

The Fifth Circuit has held that "[g]reat latitude is given the district court in awarding damages under the Lanham Act, 'which expressly confers upon the district judges wide discretion in determining a just amount or recovery for trademark infringement.'" *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1304 (5th Cir. 1997) (quoting *Holiday Inns, Inc. v. Alberding*, 683 F.2d 931, 935 (5th Cir. 1982)). To address this broad discretion, courts have looked to the factors relevant for statutory damages

1097534

in copyright infringement cases to calculate statutory damages in trademark counterfeiting cases. *E.g., Coach, Inc. v. Brightside Boutique*, 2012 WL 32941 at *4; *Microsoft Corp. v. Software Wholesale Club*, 129 F. Supp. 2d at 1008; *see also Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999) ("The Copyright Act is not only similar in principle to the Trademark Act but identical in much of its statutory damages language. Both authorize determinations within a broad range 'as the court considers just' ... with the maximum increasing for "willful" infringements.").

As discussed in Section II.A, Mr. De La Rosa's willful infringement, the need to deter him and others, and the high value of the Academy's infringed rights justify a high statutory award. (*See* Compl. ¶¶ 16, 19, 21, Exhs. G, J and L.) However, the Academy does not seek the maximum statutory damages for willful infringement or the maximum amount for non-willful infringement; it seeks $100,000 per infringed Mark. The Academy's request is consistent with statutory damages awarded in similar cases in this circuit. *See, e.g., Coach, Inc. v. Brightside Boutique*, 2012 WL 32941, *6 (W.D. Tex. Jan. 6, 2012) (holding that $100,000 per mark per good infringed for willful infringement); *Coach, Inc. v. Chocolate 10 Fashions*, No. 4:11–CV–00899 (S.D. Tex. Aug. 19, 2011) (default judgment awarding $100,000 per mark per good infringed); *Coach, Inc. v. Shanghai Boutique*, Cause No. 4:10–CV–4693 (S.D. Tex. May 25, 2011) (default judgment awarding $71,428.57 per mark infringed); *Coach, Inc. v. Geneva Gifts*, No. 4:10–CV2028 (S.D. Tex Feb. 10, 2011) (default judgment awarding $71,428.57 per mark infringed).

### III. THE ACADEMY IS ENTITLED TO ENTRY OF A PERMANENT INJUNCTION

The Academy is entitled to permanent injunctive relief under both the Copyright Act and federal trademark law. 17 U.S.C. § 502(a) ("Any court . . . may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."); 25 U.S.C. § 1116(a) ("The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title.")

To establish entitlement to permanent injunctive relief in copyright infringement cases, the party seeking the injunction must demonstrate: "(1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) the injunction will not disserve the public interest." *Broadcast Music, Inc. v. Tex Border Mgmt., Inc.*, -- F. Supp. 2d --, 2014 WL 1314833, *5 (N.D. Tex. March 31, 2014). "In short, an injunction is appropriate if liability has been established and if there is a continuing threat of further infringement of Plaintiff's copyrights." *Id.* Each of those criteria is met here. First, the Academy has established actual success on the merits of its copyright infringement claim. *See supra* Section I.A. Second, the Academy has no adequate remedy at law for further infringement. As Mr. De La Rosa's actions—including his admitted infringement after being put on notice and falsely stating under penalty of perjury that the infringement had ceased—demonstrate, a permanent injunction is necessary. (Compl. ¶¶ 17-19, Exhs. H and I.) Third, an injunction preventing the sale of counterfeiting statuettes and

16

infringing text could not cause any legitimate damage to the defendant. Fourth, no public interest would be served by allowing Mr. De La Rosa to further infringe on the Academy's copyrighted work.

To establish entitlement to permanent injunctive relief for trademark infringement, a plaintiff must establish "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Reservoir, Inc. v. Truesdell*, -- F. Supp. 2d --, 2014 WL 808026, *10 (S.D. Tex. Feb. 28, 2014) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Each of these elements is satisfied and justifies an injunction. First, as discussed above in Section II.A, the Academy has suffered irreparable injury as a result of Mr. De La Rosa's actions. Second, Mr. De La Rosa's history of falsely claiming he no longer had counterfeits in his possession and falsely claiming he would cease infringing weigh heavily in favor for the entry of a permanent injunction to ensure that this conduct does not continue in the future. (*See* Compl. ¶¶ 17-19, Exhs. H and I.) Third, the balance of the hardships favors the Academy; equity does not favor Mr. De La Rosa's continued sale, creation, and obtaining of counterfeit statuettes or using the Academy's Marks. Finally, "[t]he public has an interest in knowing or being assured that persons do not violate laws regarding trademarks, copyrights, and fair competition." *Designer Technologies, Inc. v. Killett*, 2014 WL 25518, *3 (N.D. Tex. Jan. 2, 2014). Each of the factors for a permanent injunction thus favors the issuance of a permanent injunction against Mr. De La Rosa.

1097534

"'[T]he scope of injunctive relief is dictated by the extent of the violation established....' The district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order." *John Doe # 1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702, (1979)). The Academy, through its Proposed Order filed concurrently, requests that Mr. De La Rosa and any person or entity acting at his direction, or within his control, (1) be permanently enjoined from (a) using the Academy's copyrights and trademarks or any other images or word marks that cause the public to mistake products as originating from or being sponsored, endorsed, or approved by the Academy, including through the making or selling of replica statuettes, (b) committing any act calculated to cause purchasers to believe that Defendant De La Rosa's products are sponsored, endorsed, or approved by the Academy; (c) diluting and infringing the Academy's trademarks and damaging their goodwill; and (d) causing, aiding, and/or abetting any other person from doing any act proscribed by this Order; (2) be ordered to identify the source of their replica statuettes, and (3) be compelled to turn over all counterfeit replicas in his and their possession, as well as the means for creating replica statuettes, such as molds. 17 U.S.C. § 503(b) ("As part of a final judgment or decree [of copyright infringement], the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced."); 15 U.S.C. § 1118 (upon a finding of trademark infringement, any item that was the subject of the violation must be delivered up for destruction); *Hammerhead Entm't, LLC v. Ennis*, 2011 WL 2938488, *9-10 (E.D. Va. July 19, 2011) (ordering delivery and destruction).

As in *Coach, Inc. v. Brightside Boutique*, the relief the Academy seeks "is narrowly tailored to remedy the harms shown ... and is necessary to prevent Defendants from unlawfully infringing on [the Academy's] marks." 2012 WL 32941, *7 (W.D. Tex. Jan. 6, 2012). The requested relief enjoining further counterfeiting activity is identical or very similar to injunctive relief granted by other courts in this Circuit. *See id.* (citing *Coach, Inc. v. Linda's Accesorios Y Cellulares*, 2011 WL 2601525 (N.D. Tex. June 30, 2011); *Coach, Inc. v. Chocolate 10 Fashions*, No. 4:11–CV–899 (S.D. Tex. Aug. 19, 2011); *Coach, Inc. v. Shanghai Boutique*, No. 4:10–CV–4693 (S.D. Tex. May 25, 2010); *Coach, Inc. v. Geneva Gifts*, No. 4:10–CV–2028 (S.D. Tex. Feb. 10, 2010)). Accordingly, the Academy's requests for permanent injunction should be granted.

## CONCLUSION

Because Mr. De La Rosa admitted to all causes of action, the Academy is entitled to judgment on the pleadings in its favor on all five causes of action, damages in the amount of $375,000, and a permanent injunction.

DATED: May 5, 2014

        SCOTT, DOUGLASS & McCONNICO, LLP
        600 Congress Avenue, Suite 1500
        Austin, Texas 78701-3234
        Telephone:  (512) 495-6300
        Facsimile:   (512) 474-0731

        By: /s/ Paige Arnette Amstutz
            Asher B. Griffin
            Texas Bar No. 24036684
            E-Mail: agriffin@scottdoug.com
            Paige Arnette Amstutz
            Texas Bar No. 00796136
            E-Mail: pamstutz@scottdoug.com

OF COUNSEL:
QUINN EMANUEL URQUHART
& SULLIVAN, LLP

Margret M. Caruso (Admitted *Pro Hac Vice*)
California Bar No. 243473
E-Mail: margretcaruso@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065-2139
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100

A.J. Bedel (Admitted *Pro Hac Vice*)
California Bar No. 243603
E-Mail: ajbedel@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

ATTORNEYS FOR PLAINTIFF
ACADEMY OF MOTION PICTURE
ARTS AND SCIENCES

## CERTIFICATE OF SERVICE

    I hereby certify that, on May 5, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and I hereby certify that I have served the document on the following non-CM/ECF participants:

**VIA FIRST CLASS U.S. MAIL**
**AND EMAIL AT jdlr1018@gmail.com**
Jaime De La Rosa
2601 La Frontera Boulevard #3202
Round Rock, TX  78610
*Pro Se* Defendant

**VIA FIRST CLASS U.S. MAIL**
**AND EMAIL AT margretcaruso@quinnemanuel.com**
Margret M. Caruso
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA  94065-2139

By:   /s/ Paige Arnette Amstutz
      Paige Arnette Amstutz

20

1097534